**UNITED STATES of America, Appellee,**

v.

**Ralph CIOFFI, Appellant.**

**No. 225, Docket 24830.**

United States Court of Appeals Second Circuit.

Argued Feb. 11, 1958.

Decided March 13, 1958.

Daniel H. Greenberg, New York City, for appellant.

Warren Deutsch, New York City, Cornelius W. Wickersham Jr., U. S. Atty., E. D. New York, Brooklyn, N. Y., for appellee.

Before HAND, HINCKS and LUMBARD, Circuit Judges.

HAND, Circuit Judge.

The facts that support Cioffi's conviction for receiving a stolen motor vehicle in violation of § 2313 of Title 18 of the United States Code, are as follows. The motor, a tractor, owned by one, Bretz, had been driven from Pennsylvania to Chicago on December 19, 1954, and was stolen on that night, presumably by a man named Harris. In any event John Metz bought it from Harris in February or March, 1955, concededly with knowledge that it had been stolen, and he used it in his business of letting it out to haul goods, ordinarily driving it himself. Metz's testimony as to what he did with the tractor after buying it in Chicago is not altogether clear, but he testified that he had made several trips with it in and out of New York during a period of over two months before he sold it to the accused, Cioffi, in New York on May 20, 1955. He had always meant to dispose of it, he said, because, as it was stolen, he did not wish it to be discovered in his possession. He met Cioffi, "a week or two before the sale," and offered to sell it to him for eight hundred dollars, which Cioffi refused, declaring that he would pay no more than six hundred. A short time thereafter Metz decided to accept six hundred dollars, and on the day of his return from a round trip to Connecticut whence he had driven the tractor, he sent word to Cioffi that he would take his offer and he delivered it to Cioffi on the same day.

On this appeal Cioffi does not raise the question whether he had knowledge that the tractor had been stolen when he received it and we shall not discuss the evidence on that issue; but he does challenge the evidence that it was then "moving as, or * * * a part of, or constitute(d) interstate commerce"; and he also argues that the judge's charge on that point was incorrect. His position is best set forth in the following request to charge, which

the judge refused: "If the jury believes Metz's testimony that at the time he bought the tractor in Chicago his purpose and intention was to use it in his business and that he did use it in his business for several months prior to his selling it to the defendant, then the jury should find that the tractor had lost its interstate character, and no federal crime was committed." That request assumes that § 2313 is confined to the first transit of the stolen "motor vehicle" across any state line, and that, after it had once ceased to be a part of that "interstate commerce," the section did not apply to it although it was sold to a guilty buyer, while it was a part of some "interstate commerce" in which it was later involved. In short, it presupposes that only the first entry into "interstate commerce" is relevant.

We can find no warrant in any of the decisions for such an interpretation, nor any reason so to circumscribe the section. Schwachter v. United States, 6 Cir., 237 F.2d 640 does not cover the situation, for, so far as appears, the motor had never left the state, Kentucky, to which the thief had taken it from Ohio; and the only question was whether when it was sold it had lost its interstate character as part of that transit. So far as we can find, it has never been even intimated that the crime cannot be committed by a sale while the vehicle is "part of" a later transit. If it be supposed that the occasion for the section and for § 2312 is the difficulty of securing convictions in state courts, we answer that it may be quite as hard to do so after a second entry into "interstate commerce" as after the first.

■■ Therefore Judge Bruchhausen was certainly right in refusing Cioffi's request. It is true that what he did charge was in the very general language,

taken from Schwachter v. United States, supra, at page 644: "the interstate movement of the car does not necessarily cease when the car stops and transportation of it into the other state ends. The sale thereafter may be an incident to the theft and transportation and so tied up with it as to constitute the final step of a continuous unlawful scheme. * * * But its character of being a part of interstate commerce does not continue indefinitely after its transportation ends." However to this instruction Cioffi did not except, as Rule 30 of the Criminal Rules, 18 U.S.C., requires. Therefore the only question we need answer on this appeal is whether there was evidence that Metz sold the tractor while it was "a part of" the "interstate commerce" that began in Connecticut and ended in New York on May 20, 1955. Not only was there such evidence, but it was so convincing that in a civil action it would have been necessary to direct a verdict upon it. Metz had already decided to accept Cioffi's offer before he got back to New York, and he sold and delivered the tractor on the same day that he returned. Nothing could more completely make it "a part of" the "interstate commerce" involved in that movement.

The question put to Goldstein on his cross examination and his answer were within the discretion of the judge and in any event the matter is too trivial to justify the discussion.

■ We need not discuss the second count: *i.e.*, that charging a conspiracy with Goldstein to "receive" the tractor; for it is well settled that when one count of an indictment is sustained, it becomes unnecessary to consider any other on which the sentence is concurrent with the first.[1]

Conviction affirmed.

**1.** Claassen v. United States, 142 U.S. 140, 12 S.Ct. 169, 35 L.Ed. 966; Evans v. United States, 153 U.S. 608, 14 S.Ct. 939, 38 L.Ed. 839; Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692; Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Pinkerton v. United States, 328 U.S. 640, 642, 66 S.Ct. 1180, 90 L.Ed. 1489 (note).